HAZELWOOD *v.* RAILROAD EMPLOYEES' MUT. RELIEF SOCIETY.

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

..STEINMETZ, LOWE & WIMBERLY and B. A. MOELLER, for plaintiff in error.

KENNERLY & KEY, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit on a benefit certificate by the widow of a member of defendant society. The amount claimed by the widow is $332.85. The society admits liability for $132.85 and has paid that amount to her. The controversy is as to the balance. The circuit court dismissed her suit but the Court of Appeals rendered judgment in her favor. We granted the defendant's petition for *certiorari,* and the case has been argued. The defendant is a mutual benefit society organized under the laws of this State. It is a local concern; its membership being confined to the employees of the Southern Railway Company at Knoxville.

The deceased, Hazelwood, became a member of this organization April 11, 1923. He died April 1, 1932. Under the constitution and by-laws as written at the time he joined the society, the widow of a member of his classification would have been entitled to a death benefit of $300 and certain disability benefits amounting to $32.85 upon the decease of her husband at the time stated in good standing and after the illness which carried off Hazelwood.

Prior to Hazelwood's death April 1, 1932, and effective January 1, 1932, the constitution and by-laws of the society were so amended as to reduce the death benefit of members of Hazelwood's classification to $100. This appears to have been found desirable by reason of the condition of the society's finances. It does not appear that Hazelwood participated in the proceedings to amend the constitution and by-laws or acquiesced therein.

The benefit certificate issued to Hazelwood is in words and figures as follows:

"Certificate No. 875. Grade B. Railroad Employes' Mutual Relief Society, Knoxville, Tennessee.

"Certificate of Membership

"Witnesseth: That the application of Abe Hazelwood for membership in the Railroad Employes' Mutual Relief Society, of Knoxville, Tennessee, has been accepted, but that he was elected a member of Grade B on the 11 day of April, 1923, and that the said Abe Hazelwood is entitled to receive Sick Benefit at the rate of $8 per week in case of sickness, the first week or 7 days, to be deducted, as provided by the Constitution and By-Laws of said Society, or by any amendment or modification thereof.

"The Railroad Employes' Mutual Relief Society further promises, and binds itself to pay the beneficiary of the said Abe Hazelwood to Annie Hazelwood, wife, a sum, not to exceed $300, in case of death as provided by the Constitution and By-Laws. See Article 12, Section 4 Constitution, or any amendment or modification thereof.

"In Witness Whereof, the Railroad Employes' Mutual Relief Society has caused its seal to be affixed, and this Certificate to be signed by the President and Secretary.

"RAILROAD EMPLOYES' MUTUAL RELIEF SOCIETY,

"By A. C. LEWIS, President.

"E. P. KADERLY, Secretary."

It will be observed that the benefit certificate says, "See Article 12, Section 4, Constitution, or any amendment or modification thereof." A copy of the constitution and by-laws is filed with the record, stipulated to contain the applicable provisions as when Hazelwood joined the society, but in the copy of the constitution filed there is no

section 4 in article 12. Apparently there has been some rearrangement as to the numbering of the sections of the constitution. It is agreed, however, by counsel that the reference in the benefit certificate is to a provision appearing in the constitution filed as article 11, section 5, which is as follows:

"Upon the death of a member there shall be paid out of the funds of the Society to some one legally authorized to receive the same: Grade 'B' three hundred dollars; Grade 'C' two hundred and fifty dollars; Grade 'A' one hundred and fifty dollars, as a funeral benefit, provided the deceased had been a member in good standing for six years and six months counting from the day of the month in which he was elected to membership. There shall be allowed for each month after the first six months that they have been a member of grade 'B' the sum of four dollars and sixteen and two-thirds cents; for grade 'C' the sum of three dollars and twelve and one-half cents; for grade 'A' the sum of two dollars and eight and one-third cents, but no funeral benefits for a fractional part of a month will be allowed."

So far as the record discloses, there was no written application on the part of Hazelwood for membership in this society. The testimony of an officer of the society is introduced in which he says that he fully explained to Hazelwood at the time the latter joined that the constitution and by-laws of the organization were paramount, governed the contract, etc. Some of this testimony was excluded by the trial court. This, however, is not particularly important. We look necessarily to the benefit certificate and the constitution to gather the contract between the parties.

The laws of a benevolent association not in conflict

with federal and state laws or contrary to public policy are to be taken as parts of its contracts with its members. The reserved right of such an association to amend its laws, to which a member agrees upon joining, is, generally speaking, binding upon that member. *Supreme Lodge K. of P.* v. *La Malta*, 95 Tenn., 157, 31 S. W., 493, 30 L. R. A., 838; *Clement* v. *Clement*, 113 Tenn., 40, 81 S. W., 1249.

Although there is a decided conflict of authority, this court is committed to the proposition that the power reserved by a mutual benefit society to amend its laws does not authorize it to decrease the benefits to which a member is entitled by the terms of his contract. *Gaut* v. *American Legion of Honor*, 107 Tenn., 603, 64 S. W., 1070, 1071, 55 L. R. A., 465. The question is discussed at some length in that case, and we need not go over the ground again. Such now appears to be the weight of authority. Perhaps the leading case supporting this view is *Wright* v. *Knights of Maccabees*, 196 N. Y., 391, 89 N. E., 1078, 31 L. R. A. (N. S.), 423, 134 Am. St. Rep., 838. Perhaps the leading case maintaining the contrary view is *Reynolds* v. *Supreme Council R. A.*, 192 Mass., 150, 78 N. E., 129, 7 L. R. A. (N. S.), 1154, 7 Ann. Cas., 776. All the cases are collected in a note, 31 L. R. A. (N. S.), 423, and in a note, L. R. A. 1917C, 627.

It is said, however, that the benefit certificate in the case before us differs from that considered by the court in *Gaut* v. *American Legion of Honor, supra.* In the former case the certificate provided for the payment upon death of the fixed sum of $5,000. In the case before us the certificate provides for the payment upon death of "a sum, not to exceed $300, in case of death as provided by the Constitution and By-Laws. See Article 12, Sec-

tion 4, Constitution, or any amendment or modification thereof.''

This difference in the two certificates seems insufficient to take the present case out of the authority of the earlier decision. This certificate, instead of providing for a payment of $300, provides for a payment not to exceed $300 ''as provided by the Constitution and By-Laws.'' This ends the sentence. A reference to the constitution and by-laws shows that the death benefit provided on account of the decease of a member of Hazelwood's classification is $300—no more, no less. The reference incorporates the fixed sum of $300 as plainly as though that sum had been written into the certificate without qualification. The concluding sentence of this paragraph of the benefit certificate, ''See Article 12, Section 4, Constitution, or any amendment or modification thereof,'' could certainly have no greater effect than the written application of the member in *Gaut* v. *American Legion of Honor* running, ''I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which may hereafter be adopted by the same.''

An effort was made to take a North Carolina case out of the majority rule on a similar ground, and the court said:

''It [the association] insists that the policy did not stipulate to pay the fixed sum of $5,000 upon the death of the insured, but only agreed to pay some indefinite sum not exceeding that amount. If this contention were correct, and carried to its legitimate conclusion, it would enable the defendant to meet its obligations upon its own terms, and thus defeat the essential elements of a con-

tract. Such a construction would doubtless insure the continued existence of the association in a prosperous condition, but it contains no element of reciprocity, and we cannot suppose that it was ever contemplated by the plaintiff." *Makely* v. *Legion of Honor,* 133 N. C., 367, 45 S. E., 649, 651.

Affirmed.