155 So.2d 820 (1963)
BROTHERHOOD'S RELIEF AND COMPENSATION FUND, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania, Appellant,
v.
James E. CAGNINA, Appellee.
BROTHERHOOD'S RELIEF AND COMPENSATION FUND, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania, Appellant,
v.
Albert P. LOMBARDI, Appellee.
Nos. 3718, 3719.
District Court of Appeal of Florida. Second District.
August 21, 1963.
*821 David J. Kadyk, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
C. Lawrence Stagg, of Whitaker, Mann & Stagg, Tampa, for appellees.
AKRIDGE, WM. G., Associate Judge.
Appellees, plaintiffs below, filed separate suits against appellant, defendant below, asking damages based upon alleged "benefits" due them under their Certificate of Membership in the appellant organization. Appellant is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, its members being restricted to active employees of transportation companies engaged solely in hazardous occupations. Appellees further alleged that they had made all payments of dues required and had taken all actions necessary to secure the benefits alleged to be due thereunder. After appellant filed its answer in each case, denying that appellees were entitled to benefits under the provisions of the Constitution of appellant, as set forth and incorporated in each Certificate of Membership, the two cases were consolidated for further proceedings before the trial court, and here consolidated for appeal purposes. Appellees filed their motion for summary judgment, based upon a stipulation of facts filed in the consolidated cases, together with the affidavits of the appellees attached thereto, to which the appellant filed affidavits in opposition. After argument the lower court entered a summary final judgment in favor of the appellees, and it is from this summary final judgment that appellant filed its notice of appeal.
It is necessary for clarity to set out the facts involved. The appellant is an organization composed of members who pay regular dues and thereby become entitled to specified benefits as a result of their retirement or being "held out of service" (unemployed). It operates within this state through various locals, whose duties include soliciting members, rendering advice, and collecting dues. The appellees enrolled in the corporation in 1956, at which time a printed "Certificate of Membership" and "Constitution" were furnished to them. The Certificate and Constitution were amended in 1958, without change in the material portions of their language, which may be summarized as follows: Article XIII  Provides that members are entitled to certain benefits if "held out of service." Article XXXV  Defines "held out of service" as including all cases where an employee-member has been relieved by his employer from the performance of his usual duties. In order to qualify, the discharge by the employer must be as discipline for an offense, but not because of an intentional rule violation. Article XII  Provides certain exceptions to the benefits accruing to members if "held out of service." Among *822 these exceptions is a provision that an employee shall not be entitled to such benefits if his claim is based in whole or in part upon his "failure to pass any physical examination or test required by the employer."
From the date of plaintiffs' enrollment until July 1, 1960, the language of the sections referred to above remained the same. During this period other claims based upon failure of employees to pass mental progressive examinations were voluntarily paid by the defendant. On July 1, 1960, certain amendments to the Constitution became effective, as adopted by the defendant. The plaintiffs received proper notice of the holding of the meeting at which these amendments were adopted. Among the amendments was the deletion of the word "physical" from the language quoted above from Article XII. Therefore, the exception read: "failure to pass any examination or test required by the employer." Each of the plaintiffs received a copy of the new Certificate, as amended, along with a covering letter which stated, in essence, that the defendant had merely changed the Certificate and Constitution by eliminating certain unnecessary words for purposes of simplification. It further stated that "(y)ou will understand that no benefits have been taken away from you through rewriting our laws, * * *."
In April, 1961, each of the appellees were discharged by their employer and permanently removed from service by virtue of their respective failure to pass mental progressive examinations required by their employer. As a result of their removal, they filed their complaints in the lower court, seeking benefits alleged to be due to them as a result of their "membership" in the appellant organization.
The lower court found for the appellees for the benefits alleged to be due and further found that the defendant (appellant) was an "insurer" as defined in the Florida Insurance Statutes and that the respective appellees were therefore each entitled to a reasonable fee for the services of their attorneys in the case, such fee to be included in judgment against the appellant.
Appellant contends that appellees could not complain of the amendment because when they became members of the appellant corporation Article XXVI relative to amendments was in full force and effect, viz:
"The Constitution of this organization may be altered, modified, amended, changed or repealed in whole or part at any regular meeting of the members of the organization."
and consequently the Constitution and By-Laws could be amended at any time without affecting the rights of any member. We disagree with this contention. It is a well established general rule that a corporation is prohibited from amending its by-laws so as to impair a member's contractual right. This principle is stated in 8 Fletcher, Cyclopedic of Private Corporations (Perm. Ed.) 663-667 (#4177):
"* * * Even an express statutory grant of the power of the amendment cannot authorize the adoption of an amendment which impairs the obligation of a member's contract and this, if for no other reason than it cannot do so under the Federal Constitution. And it is the universally accepted rule that reserved power to alter, amend or repeal by-laws cannot confer authority to make an amendment which will amount to the destruction or impairment of the vested or contract rights of the member * * *"
The lower court held that the appellant was an insurer under Section 624.03, Florida Statutes, F.S.A., which defines an insurer as being every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or annuity, and appellees' membership certificate was a contract of insurance under 624.02, which reads as follows:
"`Insurance' is a contract whereby one undertakes to indemnify another or *823 pay or allow a specified amount or a determinable benefit upon determinable contingencies."
While the certificate issued by appellant to the appellees has the attributes of an insurance contract and would very likely be construed as an insurance contract under said section we feel, and so hold, that Section 632.051 specifically exempts appellant's activities and contracts from the Florida Insurance Statutes, viz:
"632.051 Exempted Societies

"(1) Nothing contained in this chapter shall be so construed as to affect or apply to:
* * * * * *
"(b) Orders, societies or associations which admit to membership only persons engaged in one or more crafts or hazardous occupations, in the same or similar lines of business, insuring only their own members, their families and descendants of members, and the ladies' societies or ladies' auxiliaries to such orders, associations; * * *."
Contracts similar to the ones involved here have been dealt with in other states being referred to as "unemployment insurance" or "loss of job insurance."
In 9 Appleman, Insurance Law and Practice, pages 52-53 (Sec. 5254), is a text section entitled "Loss of Job Insurance" which simply recognizes that, aside from unemployment compensation acts, "* * * some labor unions and similar organizations write loss-of-job policies to protect their members." A similar commentary is contained in 1 Couch, Insurance 2d, pages 101-102 (Sec. 107), entitled "Unemployment Insurance", which reads in part:
"A contract to pay an employee money in the event of his unemployment is a contract of insurance."
In State ex rel. National Employes' Ass'n v. Barton, 92 Neb. 666, 139 N.W. 225 (1912), a petition was filed by a corporation for a writ of mandamus to compel the state auditor to issue a license to the company to do business within that state. The company was organized to sell contracts to employees to compensate them when out of work for specified reasons. The court held that the company must comply with the insurance statutes of the state and stated:
"It appears to be conceded that the object of this company is to transact a species of insurance."
This case is cited in annotation at 63 A.L.R. 772, entitled "What Constitutes Insurance."
Stitt v. Locomotive Engineers' Mutual Protective Association, 177 Mich. 207, 142 N.W. 1110 (1913) dealt with an unsuccessful suit by an employee to recover loss-of-job indemnity under contract with the defendant. In its opinion, at page 1113 of 142 N.W., the court refers to the defendant as of a class of "mutual indemnity or insurance companies."
Anderson v. Conductors' Protective Assurance Co., 266 Mich. 471, 254 N.W. 171 (1934) is another case involving this type of insurance. The defendant was organized under a specific Michigan statute permitting the organization of railroad employees to engage in the business of providing an indemnity to members for loss of job due to discharge or retirement. In its opinion, the substance of which is not relevant here, the court speaks of the defendant as issuing policies and observes that it is supervised by that state's Commissioner of Insurance.
It is apparent from a consideration of the recognized text authorities and the few court decisions from other states involving this type of insurance, that an agreement to provide benefits for loss of employment is a form of insurance. This is equally clear when viewed in the light of the broad provisions of our insurance statutes defining insurance.
We feel that regardless of the fact that the appellant is not required to qualify under the Florida Insurance Statutes and *824 is exempt therefrom, the contracts held by the appellees should be governed by the laws generally pertaining to insurance contracts.
In 2 Couch, Insurance 2d, 400 et seq. (Sections 20.141-20.143), the general rules are stated. A benefit association has the right to make amendments to its constitution and by-laws, particularly where the power to so amend is provided for in the constitution. Couch further states as follows, however:
"Even when the power to change benefits otherwise exists, it must be exercised in harmony with the general rule that vested rights of members may not be impaired. Accordingly, subsequent changes referring to benefits must not violate the vested rights of the member as applied to prospective benefits. (Emphasis supplied.)
* * * * * *
"However, by the weight of authority, even though a member's right to benefits extended by the association is purely prospective, once the contract of membership cannot be reduced, and this is true although the right of amendment has expressly been reserved. Stated differently, even though an express reservation of the power of amendment has been made, the general consent that a member thereby gives to be bound by all present and future enactments of the association does not contemplate that it may be made a means of depriving him of those rights that became vested upon his admission to membership. In accordance with this principle it has been held that a benefit society cannot by enacting a by-law decrease the benefits to which a member is entitled by the terms of his contract." (Emphasis supplied.)
These general principles have been stated by the Florida Court in at least two cases. The decision in Grand Lodge, Knights of Pythias of North America, etc. v. Harris, 124 Fla. 1, 167 So. 814 (1936), involved the validity of an amendment of a fraternal benefit life insurance policy so as to simply change the method of payment of benefits from a lump sum to an installment basis. The Florida Court noted the distinction between an amendment merely affecting a member's duty to the society and one affecting the society's promise to its members, and stated as follows at page 815 of 167 So.:
"We hold, in line with the overwhelming weight of authority on the subject, that the contract rights between an incorporated fraternal society and its insured certificate holding member, regarding the benefits promised the member as an insured person insured by the corporate society, cannot, under section 6406, C.G.L., section 4442, R.G.S., supra, be lawfully destroyed, impaired, or taken away from him by a subsequently enacted by-law of the fraternal benefit society, even though the application for the policy and the policy itself contain a provision to the effect that the member is to be bound by, and must conform to, all the laws then in force, as well as such as might thereafter be enacted by the association."
The material portion of Section 6406 of the Compiled General Laws (1927) provided:
"* * * (A)ny changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."
The Harris case was cited with approval in Hogan v. Supreme Camp of the American Woodmen, 146 Fla. 413, 1 So.2d 256 (1941), holding invalid a change in a benefit society's constitution and by-laws which limited the benefits payable. The court *825 stated that the attempted amendment was an impairment of the original certificate and therefore invalid, although consented to by the member in advance.
Similarly, the provision of our current statute which is the successor to Section 6406, C.G.L. (1927), provides for the preservation of existing rights under a contract. Section 632.291(3), Florida Statutes, 1961, F.S.A., provides as follows:
"Any changes, additions or amendments to the charter or articles of incorporation, constitution or laws duly made or enacted subsequent to the issuance of the certificate, shall bind the member and the beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership, except that no change, addition, or amendment shall destroy or diminish benefits which the society contracted to give the member as of the date of issuance." (Emphasis supplied)
We hold therefore that the appellant could not validly amend its agreement with the appellees so as to deprive them of their vested contractual rights to recover benefits for unemployment when occasioned by their failures to pass mental examinations. Accordingly, the Constitution was properly construed by the trial court as written at the time of its issuance to the plaintiffs.
The question of whether the contracts of appellees were in fact insurance contracts is actually immaterial since we hold that appellees are entitled to recover upon the fundamentals of contract and corporation law and this point becomes actually significant only insofar as it concerns the correctness of the trial court's award of attorneys' fees for appellees. We hold that inasmuch as the appellant's activities and contracts were exempt from the provisions of the Florida Insurance Statutes that the lower court erred in including in its judgment the attorney fee for the attorneys representing the plaintiff-appellees.
The appellants contend that the lower court should have applied the law of Pennsylvania, the State of appellant's incorporation, in the interpretation of this amendment of the Certificates of Membership and Constitution of appellant. The Pennsylvania courts have held that a corporation, whether for profit or non-profit, or a beneficial society, may amend its constitution and by-laws and such amendments are binding upon the members thereof as to future rights and privileges and benefits of the members. This holding appears to be contrary to the general law and the holding of the Florida Courts. Grand Lodge, Knights of Pythias of North America, etc. v. Harris, 124 Fla. 1, 167 So. 814 (1936), and Hogan v. Supreme Camp of the American Woodmen, 146 Fla. 413, 1 So.2d 256 (1941).
It is well established law that a foreign law raised for the first time in the appellate court comes too late and cannot be considered. We have examined the record and did not find that this point was raised in the pleadings, nor any proof submitted as to the law of Pennsylvania and thus the law of Pennsylvania was neither alleged nor proved.
The Third District Court in Miller v. Shulman, 122 So.2d 589 (Fla.App. 1960), stated on page 590:
"* * * There is nothing in the pleadings or otherwise in the record of this cause to show that the appellant relied upon any Wisconsin law providing for increasing or reducing the amount of the support payments after they became due. The absence from the record of both pleading and proof of foreign law precludes our consideration of this contention raised for the first time in appellant's brief. * * *"
*826 We therefore find that this contention comes too late and cannot now be raised for the first time in this Court.
We hold that the lower court was correct in entering judgment for the appellees for the said benefits secured to them under said membership certificate but was in error in including in its judgment the attorneys' fees.
In view of our holding, it is not necessary to discuss the element of estoppel or the other assignments of error which we hold are without merit.
The judgment of the lower court is affirmed in all respects except that portion awarding attorneys' fees.
Affirmed in part and reversed in part.
SHANNON, Acting C.J., and WHITE, J., concur.