ANDERSON v. CONDUCTORS PROTECTIVE ASSURANCE CO.

1. BENEFICIAL ASSOCIATIONS—MUTUAL PROTECTIVE ASSOCIATIONS—STATUTES.

Mutual protective associations are creatures of the statute and have power to do only such business as they are authorized therein to do, although they do have all powers necessary to the enjoyment of the rights and privileges granted (Act No. 125, Pub. Acts 1909, Act No. 37, Pub. Acts 1915).

2. SAME—ENDOWMENT PROVISION—BY-LAWS—STATUTES.

Endowment provision in policy of member of mutual protective association is impliedly forbidden by statute under which association was organized, which restricts payment of indemnity to members to "loss of position arising from discharge or retirement," is invalid notwithstanding its insertion was made pursuant to by-law (Act No. 125, Pub. Acts 1909, Act No. 37, Pub. Acts 1915).

3. CORPORATIONS—ULTRA VIRES CONTRACTS.

A corporation has power to do such business as incorporation statute authorizes and is not held out by either the government or stockholders as authorized to make contracts beyond the purposes and scope of its charter.

4. SAME—DEFENSE OF ULTRA VIRES—ESTOPPEL.

Defense of *ultra vires* is not looked upon with favor when presented for purpose of evading an obligation a corporation has assumed but contract clearly *ultra vires* statutory authorization may not be enforced and neither corporation nor other party thereto can be estopped to show character of the contract.

5. BENEFICIAL ASSOCIATIONS — DIVISION OF PREMIUMS — COMMON COUNTS.

Recovery of premiums paid mutual protective association under policy containing *ultra vires* endowment provision is denied under the common counts where other provisions of policy are valid and there is no division of the premium.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 17, 1934. (Docket No. 38, Calendar No. 37,518.) Decided April 3, 1934.

Assumpsit by Gust A. Anderson against Conductors Protective Assurance Company, a Michigan corporation, on an insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Dunham & Sherk,* for plaintiff.

*Chawke & Sloan,* for defendant.

NELSON SHARPE, C. J. The title and first section of Act No. 125, Pub. Acts 1909, read as follows:

"An act to provide for the incorporation and regulation of co-operative and mutual protective associations of railway conductors and engineers."

"Any number of railway conductors and locomotive engineers, not less than seven, who shall be residents of this State, desiring to become a body corporate for the purpose of carrying on upon the assessment or co-operative plan the business of providing indemnity to members, not exceeding five hundred dollars, for loss of position arising from discharge or retirement, may, by complying with

the provisions hereof, become, with those railway conductors and locomotive engineers that may hereafter be associated with them, or their successors, a body corporate and politic.'' (See 2 Comp. Laws 1915, § 9987.)

Pursuant to its provisions, ''The Railway Conductors Co-operative Protective Association'' filed its articles of association, approved by the commissioner of insurance and the deputy attorney general, with the secretary of State on March 10, 1910. It was stated therein that the incorporators were desirous of becoming a body corporate under the provisions of Act No. 125 and associated themselves together for that purpose. Paragraph 3 read, in part, as follows:

''The purpose of this association is to pay to its members, in case they are discharged or pensioned for causes which do not accrue within 30 days from the date of the issuance of their respective certificates, the sum of $250 during the first year of membership, and the sum of $500 after the expiration of one year from the date of the issuance of the certificate. Five hundred dollars to be the maximum amount to be paid to any certificate holder.''

The membership fee was fixed therein at $5 and the monthly assessment fee at $2. It was also stated therein:

''The by-laws of this association shall provide for and prescribe the powers and duties of trustees and officers.   *   *   *

''The terms, conditions and payment of the policies issued by this association shall be such as are authorized by these articles of incorporation, subject to the provisions of the laws of the State of Michigan.''

Its by-laws as first adopted conformed to the provisions of the statute and its articles of association.

On May 11, 1911, it amended them by inserting therein a provision reading as follows:

"Twenty years from date of issue of certificate, all assessments having been duly paid, the member will receive the sum of $500, this sum to be the maximum amount to be paid to any certificate holder on any account."

The plaintiff herein applied for a policy in said association, and one was issued to him on September 2, 1911. It contained an agreement to pay to him the fixed sums provided for in the articles of association in the event that he was discharged or pensioned, and also the undertaking provided for in the by-law above quoted.

On July 22, 1913, the State commissioner of insurance wrote the secretary of the association informing him that an examination recently made disclosed that the provision here in question was included in its policies, and that it was not authorized to so provide.

"That provision is really an endowment, and your association is not authorized to do that kind of business. It will be necessary for you to eliminate that provision from the certificate."

To this letter the secretary replied on July 29th, stating that the provision had been eliminated from the by-laws and certificates at a meeting of the officers and directors in March of that year, "and our members have been notified of these changes."

The defendant company was organized on September 16, 1915, under the provisions of Act No. 37, Pub. Acts 1915. The first section thereof reads as follows:

"Any number of persons not less than five, desiring to become a body corporate for the purpose

of insuring railway conductors, railway engineers and railway officials for loss of position resulting from discharge or retirement, may, by complying with the provisions of this act, become a body corporate for the purpose herein stated." (2 Comp. Laws 1915, § 9310.)

On September 30, 1915, a "reinsurance contract" was entered into between the defendant company and the association whereby the former took over and reinsured "all of the certificates and policies" and assumed "all of the certificate and policy liability" of the latter, and in consideration therefor the association transferred to it all of its moneys on hand and its other assets.

The 20-year term provided for in plaintiff's policy expired on September 2, 1931. He made demand upon the defendant company for the $500 claimed to be due thereon. Payment was refused, and this action was brought for the recovery thereof. The declaration was based on the provision in the policy, with the common counts added thereto. In its answer the defendant denied liability, and averred that the provision for the payment thereof was *ultra vires* and void. On trial by the court without a jury it found that "the promise in the certificate to pay the holder $500 at the end of 20 years was in the nature of endowment insurance," unauthorized by the statute and in excess of the power granted to the association; that the defendant might interpose the defense of *ultra vires,* and that the plaintiff could not recover the assessments paid by him, and entered a judgment for the defendant, from which the plaintiff has taken this appeal.

The general rule applicable to such corporations is that they are creatures of the statute and have the power to do such business only as they are authorized therein to do. This rule may, however, be

said to be modified to the extent that all powers necessary to the enjoyment of the rights and privileges granted by the statute are included therein.

The first section of the statute under which the association was organized authorized it to provide indemnity to its members for "loss of position arising from discharge or retirement." The promise in the policy issued to plaintiff to pay to him $500, 20 years from the date of its issue, was clearly in the nature of endowment insurance and unauthorized under the act. *Walker* v. *Giddings, Commissioner of Insurance,* 103 Mich. 344; *Calkins* v. *Bump,* 120 Mich. 335.

While the insertion of such a provision in the policies to be issued was not expressly prohibited by the language of the statute, it was impliedly forbidden by restricting the payment of the indemnity to members who, for certain stated reasons, had lost their positions in the railroad service.

The by-law under which the provision was inserted in the policy was ineffective to validate it, and its issue pursuant thereto was beyond the power and authority conferred by the statute.

"A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other. It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. It is not vested with all the capacities of a natural person, or of an ordinary partnership, but with such only as its charter confers." *Davis* v. *Railroad Co.,* 131 Mass. 258 (41 Am. Rep. 221).

Counsel for the plaintiff insist that, the plaintiff having fully performed under the policy, the defendant is estopped from claiming its invalidity in this respect. The defense of *ultra vires* is not looked

upon with favor when presented for the purpose of evading an obligation which a corporation has assumed. The character of the business it is authorized to engage in is, ordinarily, a matter between it and the State. But, when the contract entered into is clearly beyond the scope of the powers conferred on it by the statute under which it is organized, it is illegal and void in its inception, and performance under it may not be enforced.

In *Geraghty* v. *Washtenaw Mutual Fire Insurance Co.* (syllabus), 145 Mich. 635, it was held:

"A farmers' mutual fire-insurance company is not estopped to deny liability for loss on property not insurable under its charter, by the act of its president in accepting the application and issuing the policy with full knowledge of the character of the property attempted to be insured."

See, also, *Eddy* v. *Merchants, Manfrs. & Citizens Mutual Fire Insurance Co.,* 72 Mich. 651. In *Central Transportation Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 59, 60 (11 Sup. Ct. 478), the court said:

"A contract of a corporation, which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.

"When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contract-

ing with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

See, also, *Steele* v. *Fraternal Tribunes,* 215 Ill. 190 (74 N. E. 121, 106 Am. St. Rep. 160), and *Haner* v. *Grand Lodge, A. O. U. W.,* 102 Neb. 563 (168 N. W. 189).

Counsel also urge that, if recovery under the policy be denied to plaintiff, he is entitled under the common counts to a return of the premiums paid by him. In addition to the provision above considered, the policy contained the following:

"If discharged, or pensioned for causes which did not accrue until 30 days after the date of this certificate, the member will receive the sum of $250, during the first year of membership; if discharged after the expiration of one year, or pensioned after the expiration of five years, from the date of this certificate, the member will receive $500."

The articles of incorporation and by-laws at the time of the issuance of the policy to plaintiff required payment of the sum of $5 for admission and $2 a month thereafter. No change in this respect was made therein when the endowment provision was eliminated therefrom. If plaintiff had been discharged or pensioned within the 20 years, he would have been entitled to recover as therein provided. There was no division of the monthly payment. As he was protected against discharge or pension by

the payments made, there is no way in which it can be divided and he be given a return of part of it.

"Premiums are not recoverable back because the policy is *ultra vires* as to a part of the property, if it is valid as to the residue." 32 C. J. p. 1235.

During the years from 1913, when the by-law was eliminated, to 1931, when the 20 years had elapsed, the plaintiff has had the benefit of the other provisions in his policy on payment of the same assessment as the other policyholders.

The judgment is affirmed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.